**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Crim. No. 19-00044 (FLW) |
| TITO VITERI, | OPINION |
| Defendant. | |

**WOLFSON, Chief Judge:**

Defendant Tito Viteri ("Defendant"), a prisoner currently serving a 24-month sentence at the Federal Correctional Institution, Otisville ("FCI Otisville"), has renewed his prior motion for compassionate release pursuant to the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). The Court previously denied Defendant's motion because he failed to exhaust his administrative remedies.[1] In the instant motion, Defendant again seeks release from FCI Otisville to home confinement based on his current conditions of confinement and medical conditions that purportedly place him at increased medical risk. The Government opposes Defendant's motion, maintaining that Defendant is a generally healthy, well-functioning 41-year old male, and that the medical records from the Bureau of Prisons ("BOP") contradict his claim of suffering from any serious medical conditions. The Government also argues that BOP has taken significant steps to

---

[1] Under the FSA, a court may only consider a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020). Defendant filed an application for compassionate release with the warden of FCI Otisville Camp on April 10, 2020. At the time that the present motion was filed by Defendant (*i.e.*, as of May 20, 2020), the 30-day period had elapsed without a response from the warden, thereby satisfying the exhaustion requirement.

1

limit the spread of COVID-19 in FCI Otisville. For the reasons explained below, Defendant's motion is **DENIED**.

I. <u>**BACKGROUND**</u>

On January 17, 2019, Defendant pled guilty to a single-count information, which charged him with tax evasion in violation of 26 U.S.C. § 7201. (*See* ECF Nos. 18, 20.) On November 6, 2019, the Court sentenced Defendant to a term of imprisonment of 24 months. (*See* ECF Nos. 28.) Defendant was also sentenced to 24 months of supervised release following his imprisonment, and he was ordered to pay more than $2 million in restitution to the Internal Revenue Service. (*See id*.) Defendant's criminal conduct involved, *inter alia*, hiding large amounts of income; using company accounts to pay personal expenses; employing nominee accounts and accountholders to hide income; using nominees to control ownership of corporate entities; mischaracterizing W-2 employees; using sham entities and accounts through which he earned pass-through income; and making false statements to government officials. Defendant's scheme caused a substantial loss to the Internal Revenue Service of more than $2.6 million. (*See generally* Presentence Investigation Report ¶¶ 7-58.) Defendant reported to FCI Otisville on January 6, 2020 and, therefore, has served less than six months of his 24-month sentence.

On April 9, 2020, Defendant filed an emergency motion for release from custody with this Court, citing the heightened risk to his health posed by the spread of the COVID-19 virus in his prison facility. (*See* ECF No. 29.) After the Government filed an opposition, on April 10, 2020, this Court issued a letter order denying Defendant's motion without prejudice, because Defendant had not yet exhausted his administrative remedies with BOP or satisfied the 30-day prefiling waiting period, as required under the FSA before seeking relief from the Court. (*See* ECF No. 30.)

On April 10, 2020 (*i.e.*, the same day that the Court issued its letter order denying Defendant's emergency motion), Defendant, through counsel, submitted a request for compassionate release to the warden at FCI Otisville. Meanwhile, the BOP considered Defendant for transfer to home confinement, and also for a temporary furlough during the duration of the pandemic. During that review, the BOP placed Defendant in quarantine, which would expedite his release if the BOP ultimately decided to transfer him to home confinement or place him on furlough. The BOP eventually denied Defendant's application for compassionate release and for transfer to home confinement, but not before the FSA's 30-day waiting period for filing a motion in district court had elapsed without receiving a response from the warden.[2]

On May 20, 2020, Defendant filed the instant motion with the Court, in which he has renewed his request for compassionate release under the FSA. (*See* Def. Mot., ECF No. 32.) Defendant asserts in his motion papers that he suffers from "pre-existing health conditions that include asthma, allergies, migraine headaches and hypertension of the brain, and anxiety," as well as "elevated liver enzymes." (Def. Reply Br. at 1-2, ECF No. 35; *see also* Def. Opening Br. at 7, ECF No. 32-1.) Defendant argues that these "health conditions, when measured against the . . . risks and dangers of the COVID-19 pandemic to those in close physical proximity to each other, especially in a correctional setting," place Defendant at an increased medical risk. (Def. Reply Br.

---

[2]  The FSA's 30-day waiting period for filing a motion in district court expired on May 10, 2020. Subsequently, on May 26, 2020, the BOP denied Defendant's request for compassionate relief and for transfer to home confinement (and did not place him on furlough), based on the following reasons:

> A review of Mr. Viteri's medical records by Health Services revealed he has no current or previous medical conditions that are listed by the Center for Disease Control as risk of serious illness should he be exposed to COVID-19. He is not prescribed any medications for migraines, hypertension, anxiety, or asthma. In addition, Mr. Viteri has completed 19.5% of a 24 month sentence. Therefore, he was found to be ineligible for Home Confinement.

(*See* Gov. Opp., Ex. 2, at 34-3.)

at 3, ECF No. 35.) Moreover, Defendant contends that he is not a danger to the community and will not re-offend if released from prison. (*See* Def. Opening Br. at 13, ECF No. 32-1; Def. Reply Br. at 11, ECF No. 35.) As to his release, Defendant requests that this Court permit him to serve the remainder of his sentence on home confinement. (*See* Def. Opening Br. at 13, ECF No. 32-1.) Defendant claims that he will quarantine in his home, which he shares with his significant other and their children. (*See id.*) The Government opposes Defendant's motion and argues that there are no extraordinary or compelling reasons to release Defendant on home confinement at this time. (*See* Gov. Opp. Br., ECF No. 34.)

## II.   DISCUSSION

Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. § 3582(b)). One such authority for modifying a sentence is found in the recently-enacted FSA, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)   in any case—
>
> (A)   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

> unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i).  In other words, a defendant seeking a reduction in his sentence under the FSA "bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release."  *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A))

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction," and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The defendant bears the burden to establish that he or she is eligible for a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).  As the statute makes clear, compassionate release is "a rare event."  *United States v. Willis*, Crim. No. 15-3764, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted). "Mere 'speculation concerning possible future conditions does not constitute a compelling reason for release.'" *United States v. Epstein*, Crim. No. 14-287, 2020 WL 2537648, at *6 (D.N.J. May 19, 2020) (Wolfson, C.J.) (quoting *United States v. Veras*, Crim. No. 19-010, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020)).

While the Sentencing Commission has issued a Policy Statement addressing reduction of sentences under a previous version of section 3582(c)(1)(A), it has not, however, updated its Policy

5

Statement since the passage of the FSA. *See United States v. Rodriquez*, ___ F. Supp. 3d ___, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), § 1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018). Nevertheless, the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *Rodriquez*, 2020 WL 1627331, at *4 (alteration in original) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019)). The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." U.S.S.G. § 1B1.13, Application Note 1.[3] Relevant to Defendant's motion in this case, a defendant may show extraordinary and compelling reasons for release based on a medical condition where "he or she is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*, Application Note 1(A)(ii).

Here, Defendant seeks release under Application Note 1(A)(ii) based on multiple stated medical conditions. He claims that he suffers from an array of maladies, including elevated liver enzymes, anxiety, seasonal allergies, episodic migraine headaches (brought on by a diagnosed right frontal cavernous hemangioma), hypertension of the brain, and asthma. These conditions,

---

[3] It is unresolved whether a Court, can, in its discretion, determine whether a defendant has shown extraordinary and compelling reasons for release under the catchall provision of the Policy Statement. *See Rodriquez*, 2020 WL 1627331, at *3-4. Because Defendant seeks compassionate release based on a medical condition, I need not determine in this case whether I have discretion to find that other reasons exist to permit compassionate release.

Defendant argues, render him vulnerable to a possible COVID-19 infection. He also asserts that the BOP is ill-equipped to protect him and other inmates against the spread of the virus. The Government counters that the dire medical conditions that Defendant claims he suffers are contradicted by medical records from the BOP, the medical records attached to Defendants' own motion papers, and by the Presentence Investigation Report, which details the history of Defendant. According to the Government, those records, along with an affidavit (which the Government attaches to its opposition papers) by Bryan Walls, the Health Services Administrator at FCI Otisville, demonstrate that Defendant is not suffering from a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." Application Note 1(A)(ii)(I) to U.S.S.G. § 1B1.13.

Having reviewed the parties' submissions, including the pertinent certifications from medical professionals and other exhibits relating to Defendant's health, I find that Defendant has not demonstrated extraordinary and compelling reasons for his release to home confinement. To begin, I acknowledge that Defendant suffers from underlying medical conditions. But affliction with various medical conditions alone is insufficient to justify compassionate release. Instead, the threshold question is whether defendant has demonstrated "extraordinary and compelling" reasons for compassionate release. He has not.

In support of his motion, Defendant, a 41-year-old male, has submitted a letter from one of his physicians attesting that Defendant suffers from a "history of episodic migraine headaches, hypertension of the brain, anxiety and asthma." (*See* Def. Mot., Ex. C, ECF No. 32-4.)[4] The

---

[4] Defendant also conducted a more recent telemedicine consultation with a physician, on May 15, 2020, which confirmed that Defendant suffers from "cavernous angioma of the frontal lobe of the brain, migraine headaches, seasonal allergies and asthma." (*See* Def Mot., Ex. G, ECF No. 32-8.)

7

Centers for Disease Control and Prevention has identified "moderate to severe asthma" as a condition that exacerbates the risks of COVID-19, and thus moderate-to-severe cases of that condition may potentially arise to "extraordinary and compelling reasons" justifying compassionate release.[5]  Defendant has not, however, cited to any evidence that his other conditions are considered COVID-19 risk factors.  Moreover, the Government casts doubt on the existence of some of Defendant's alleged medical issues, including his asthma, of which no mention is made in Defendant's Presentence Investigation Report or his BOP medical records. (*See* Gov. Opp. at 8-12, ECF No. 34.)  The Government notes, for example, that Defendant is not taking any medications for any conditions (such as an inhaler for asthma) and has not made a single sick call while incarcerated at FCI Otisville.  (*Id.*)  While the Court is not in the best position to make a precise medical finding, the Court is skeptical about whether his claimed conditions impact him in any serious way, given that those conditions appear to have only been first documented by a physician on April 8, 2020, one day before Defendant filed his emergency motion for compassionate release with this Court.  (*Compare* Def. Mot., Ex. C., ECF No. 32-4 (physician's letter dated April 8, 2020) *with* Def.'s Emergency Motion for Release, ECF No. 29 (filed April 9, 2020).)[6]

---

[5]  *See* Centers for Disease Control and Prevention, Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (hereafter "CDC Website") (last visited June 18, 2020).  The Government also notes that, even assuming that Defendant suffers from "hypertension of the brain," that condition is distinct from "pulmonary hypertension," only the latter of which is identified as a COVID-19 risk factor.  *See* CDC Website, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (listing "pulmonary hypertension," under the umbrella of "serious heart conditions," as a COVID-19 risk factor) (last visited June 18, 2020).

[6]  I also note that the exhibits submitted by Defendant do not provide any detail or information regarding the history, status, severity, or treatment of any of his claimed conditions, such that I can assess whether those conditions are amenable to care within the environment of FCI Otisville.

8

Moreover, even assuming that Defendant's motion correctly catalogues the severity of his medical conditions, he has not met his burden of showing that that he has received—or will receive, if he requests it—inadequate medical care at FCI Otisville.  Critically, Defendant has adduced no evidence, besides Defendant's own statements, that his claimed medical conditions cannot be adequately managed inside his prison facility.  As noted above, Defendant has not made a single sick call request while incarcerated at FCI Otisville.  In light of Defendant's apparent failure to even seek medical care that is provided by the BOP, there is no basis to presume that FCI Otisville is incapable of providing adequate treatment such that Defendant's medical conditions are properly managed.

The Court is mindful of the fact that there appears to be a recent increase in the spread of COVID-19 among the prisoner population at Defendant's prison facility.  More specifically, on June 17, 2020, the Government filed a supplemental affidavit with the Court, which disclosed that, on June 12, 2020, an inmate in the "Camp" section at FCI Otisville (*i.e.*, the section where Defendant is housed) had tested positive for COVID-19.  (*See* June 17, 2020 Supp. Affidavit of Robert Schreffler ¶ 2, ECF No. 38-1.)  Following the inmate's positive test, all other inmates at the Camp were tested, and, on June 16, 2020, FCI Otisville received the tests results of 58 of 61 inmates whose samples were sent for laboratory testing.  (*Id*. at ¶ 3-4.)  Of those results, 15 inmates confirmed positive for COVID-19, 38 inmates (including Defendant) tested negative, and 5 inmates provided insufficient samples.  (*Id*. at ¶ 4.)  The Court acknowledges that the deteriorating situation within FCI Otisville may justify compassionate release for particularly vulnerable inmates within the prison population (*e.g.*, elderly inmates or inmates who suffer from severe asthma).  In this case, however, Defendant has not shown that his claimed medical conditions render him any more vulnerable than other, non-high-risk inmates to the effects of COVID-19.

In sum, the Court has considerable doubt whether Defendant suffers from medical conditions that place him at heightened risk if he were to contract COVID-19—*i.e.*, whether he is materially more vulnerable to the effects of COVID-19 than other inmates. The Court is sympathetic to Defendant's concerns about his health while in prison, but he has failed to demonstrate that these concerns provide extraordinary and compelling reasons for his compassionate release.[7]

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**. This denial is without prejudice to renewal based upon, among other possibilities, a substantial deterioration in Defendant's health.

Dated: June 19, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[7] As indicated above, if a court finds that "extraordinary and compelling" reasons justify a modification in a prisoner's sentence, the court must also decide whether to grant compassionate release by weighing the sentencing factors set forth in 18 U.S.C. § Section 3553(a), to the extent they are applicable. In this case, because I find that "extraordinary and compelling" reasons are not present, I do not reach this second part of the analysis.